On behalf of the United Fire, Mr. David B. Mueller, on behalf of the Appalachian, Mr. Brian J. Conklin. Good morning, counsel, and Mr. Mueller, when you're ready, you may proceed. May it please the court, counsel, I'm David Miller, spelled the hard way, M-U-E-L-L-E-R. You're not going to get it just by looking at it. I am here representing the Appalachian, United Fire and Casualty Company. At the outset, I want to point out that the effort here on the part of the ICC is to convert a vicarious liability additional insured endorsement to make it cover the additional insured for its own negligence. In the record, you will see the affidavit of the Kim Henness of United Fire, and she points out that this endorsement, which is the endorsement that is sold by United Fire and Casualty Company, is limited to vicarious liability on the part of Phoenix, the named insured which is imputed to ICC. How about contribution? Contribution is the separate remedy and doesn't come under the endorsement at all. Contribution would be covered under the employer's liability policy, which is an entirely different coverage. But since the subject of contribution looms large in this appeal, contribution is fault apportionment. Fault apportionment is antithetical to fault transfer. Agency is fault transfer or indemnity. Fault transfer is antithetical to fault apportionment. Here we have contribution. Well, I thought the contribution, there was a contribution action that was dismissed. The contribution action was dismissed as a result, and this is peculiar to the Contribution Act, because the plaintiff can settle directly with the employer from whom contribution is sought. The nature of contribution is fault apportionment. If you have one percent of fault on the part of the contributor, the contributor under the Contribution Act is required to pay that one percent, and the remaining 99 percent is left for the contributee. And the same is true. It could be 99 percent on the part of the contributor and one percent on the part of the contributee. By filing a third-party contribution complaint, are they precluding themselves from seeking indemnity? Let me ask you this. Are they precluding themselves from seeking defense under the vicarious liability? We submit to the yes, because what you have then is a judicial admission of fault apportionment, because if you look at the contribution statute, it says no one will pay more than their pro rata share. When you seek contribution, you're seeking to have the other person pay their share, leaving your share. Therefore ---- But wouldn't it just be an alternative pleading situation? We're talking about early in the proceedings, making a decision on how you wish to proceed. But can't you proceed by alternative pleadings, especially in light of some of the cases that talk about this continuum of control? You never know where indemnity might start and contribution end or vice versa. I mean, you don't know what the facts are going to be when you're pleading. You don't know what a fact finder is going to find. Why can't you somewhat plead in the alternative? Okay, we're talking about contribution. We're talking about the defendant and the defendant's pleading. When we're talking about the coverage, we're talking about essentially the plaintiff's complaint and how that is going to be construed. If we look at the defendant and the defendant's third party complaint, then the defendant, if it's seeking contribution, says I'm willing to pay my share, you pay your share. And if the defendant believes that he's entitled to indemnity based upon, let us say, an agency relationship. Again, why can't they plead in the alternative? Why can't they deny the complaint and say we're not at fault at all? But if we happen to be at fault, we want you to pay your fair share. Why can't you plead in the alternative? It's early on in the proceedings when the duty to defend really has to be looked at. It's early on in the proceedings. They're doing both. And also if they want indemnification, then they can have a count in the third party complaint, count one for contribution, count two for indemnification. If they're saying that they're not liable, then they're saying they're entitled to and not guilty, that there is no relationship there pursuant to which they owe anything to the plaintiff. And we, you know, make this my schedule in our briefs showing that if it's 100 percent contribution which doesn't exist, then the defendant is not liable. Well, we're not anywhere close to indemnification at this point. All we can decide in this case is defend. And the cases from the Supreme Court tell us we should not go beyond that at this point because you're not beyond that. This case is not beyond that. But this case went somewhat beyond that when the settlement took place because at the time of the settlement, which was not objected to by ICC, at that point then the Phoenix, they paid Phoenix's pro ratus share in exchange for a dismissal of the contribution claims because that's where the rubber meets the road in the end. That hadn't happened before the defense was tendered, though, had it? No. No, clearly not. So the time that we're looking at is when the defense is tendered. And at the same time when the contribution claim is filed because under Pekin Insurance versus Wilson and American Economy Insurance versus Holabird and Root, the comparison goes to the pleadings and the comparison looks to the possibilities based upon the pleadings. And once there is a contribution, a claim which has to also be considered, and as I recall at the time of the tender in this case, there was a contribution claim, either that or it followed very shortly. But we have to, and I will preface here by saying we submit that the decision below is procedurally wrong, substantively wrong, objectively inept, subjectively inept, historically wrong, and currently wrong. If we look at the controlling case, which is a Carney versus a Union Pacific, while not an insurance case, it goes to the heart of what we're talking about here, which is an implied agency relationship, agency being implied for the sole purpose of triggering coverage, and agency being implied off of the plaintiff's complaint. And the plaintiff in his complaint, and all of us having practiced, and all of us having seen complaints, know that within the boilerplate of every complaint are the allegations that the defendant was negligent through its agents, officers, and employees. That says nothing about vicarious liability on the part of someone which is another party. Can't we look beyond the complaint in an insurance case? You indicated Carney is not an insurance case. Carney is not an insurance case. Don't the insurance cases on duty to defend say that we should look, we can, or the trial court can look beyond the four corners of the complaint? That's why I pointed to Beacon Insurance versus Wilson, which is a Supreme Court case that says look to the third party complaint. And the same is true of American Economy Insurance Company versus Halliburton Root, which is relied upon by the Supreme Court in the Wilson case. And when you look at the third party complaint, at that point you see that the same party that is making the tender is seeking full abortion. And if you get back away from it just a little bit, then you see where the disservice lies because to the extent that we are saying, as some of these authorities do, that the plaintiff putting boilerplate language in agents, officers, and employees is triggering vicarious liability, then by that expedient alone, we are looking at a theory which is not pleaded by applicable standards. If you are going to plead an agency claim, and this goes to the exact language in the Carney case where the Supreme Court in saying there is no vicarious liability, number one under section 414 of the restatement, and then going on to say if vicarious liability is viable on an agency theory, it certainly isn't pleaded here. And then going on to say we are not going to consider claims which are not pleaded. But in Pekin v. Wilson, the court did say that the duty to defend is much broader, and that's why we can go outside of the exact language of the complaint in order to try to make sense of what is going on generally. We're not talking about who owes who what. We're talking about indemnification. But here we're talking about simply the duty to defend, to pay for the defense of this particular action. And in Pekin v. Wilson, the Supreme Court looked at Hullaberg and said, you know, we can go beyond the complaint. And that's what I'm saying here, because going beyond the complaint takes you to the third-party contribution claim, which contains the fault apportionment allegations saying that I want contribution, I want you to pay your share, I am liable and will pay my share. And that destroys any possibility of agency, because if agency exists, then the only remedy is indemnification. And so if what we're saying, looking at the complaint that contains the boilerplate language, is the plaintiff seeking direct liability under Section 414, or is the plaintiff seeking vicarious liability, we know that, number one, if there are two theories, if the plaintiff is seeking recovery vicariously under an agency theory, then that should be one count of the complaint. If he's seeking direct liability, that should be another count of the complaint. And Section 2603 of the Code says that separate theories must be pleaded separately. Here we get to that in the duty to defend. What? Do we get to that in the duty to defend? Aren't we just looking at the duty to defend? Looking at the duty to defend, what we're doing is looking at the allegations of the underlying complaint. And what we know from Carney is that there must be allegations in the underlying complaint of an agency relationship. And an agency relationship must be separately pleaded, as Carney says. We are not going to consider a claim which is not pleaded. If we look at a bald allegation of agency, that is not supplying the allegations. Is that my question? Go ahead and finish your thought. I have a million thoughts. Okay. This thought. I can answer questions all day morning. The thought is that no plaintiff is ever, ever going to file a complaint in a construction negligency claim based upon agency. Why? Because the principle in an agency claim must be blameless. That's Spurl versus Henry. No plaintiff is going to allege that the general contractor is not at fault simply to try to tee up an agency claim. No plaintiff is going to. But, again, the reason we look beyond the complaint is because we can't be bound. The additional insured can't be bound by what the plaintiff chooses to put in the complaint and chooses to leave out of a complaint. And there's just some major policy reasons for that. We look beyond that. That's right. And when we look at the additional insured, it is the additional insured that is making the judicial admission when it files the third-party complaint. If there was no third-party complaint seeking contribution in this case, are you conceding that there would be a duty to defend? I am not. And I am saying there is no duty to defend. Look at the Carney case on the theory which is not pleaded. Well, again, let me ask you this. Do you believe that or are you arguing that Sentex Holmes was wrongly decided? Yes. Okay. Very, very clearly, and I will depart with this, a comment. And I've been doing this now for 53 years. I've appeared before this court before and before every appellate court in the state of Illinois and the Supreme Court. I believe I have a responsibility to the law. I believe we all have a responsibility to get it right. I believe that in getting it right, as we are trained to do, we must ask the question, why? Why is the law as it is and what should the law be? And we can't simply skim the soffits over the surface and say because the first district in Sentex, without considering the ramifications of agency, says let's just pluck the word agency out of the complaint and say that by virtue of the fact that agency, while not pleaded, there are no facts to support an agency. A claim at all, we're going to say that triggers a duty to defend and then wash our hands of it, backing off and say that does not control necessarily whether there is ultimately a duty to indemnify. Because these cases are swept along with immense costs of defense. And to say that we're going to wait until the case is tried, if it is tried, to decide whether coverage was right, that's simply not answering the question, why? And you can see that we have the Illinois endorsement which says if defense costs are paid and it turns out in the end that there was no duty to defend because there was no agency relationship, then you get your money back. This is not the way, as they say, to run a railroad. We have the obligation, historically going back to 1977 with false apportionment, coming down to the present to see whether the law is consistently applied. There is no vicarious liability under section 414 and absent a well pleaded and accurate agency claim, there is no triggering of a vicarious liability endorsement, which is a distinct endorsement sold for a distinct premium. Thank you. Thank you, Mr. Miller. You'll have an opportunity to respond. Mr. Hunt. May it please the court, counsel. We're here for an accident that occurred in the middle of I-90 in Kane County. And shortly after that accident, well, almost two years, the lawsuits filed. Within 12 days, we effected a tender to the United Fire. We did, about a year and a half later, file a third-party complaint for contribution, which was subsequently dismissed about a year and a half after that. Does the filing of that forfeit your ability to go forward on the vicarious liability theory? If that were true, I think it would turn Illinois jurisprudence on its head. I think all we did by filing the complaint, the third-party complaint, was to open the door for that potentiality. We're declaring to everyone in the court and the parties. Counsel, would you turn the microphone toward you? You had it going this way. We want to make sure it's properly recorded. I'm sorry. Thank you. Is that better, Judge? I think so. Yeah. The answer to the question is I don't think that can be true. I don't think the filing of a third-party complaint is an election of remedy. I think all it's doing is putting effort. It's an alternative pleading. Yes. Yes, exactly that. Now, you've heard that Mr. Miller relies on Kearney. How do you distinguish that? I don't think Kearney has anything to do with this case, and neither did the court in Semtex-Holmes. The first history case was the first that I've seen to discuss Semtex-Holmes or, I'm sorry, to discuss Kearney in the context of the coverage action. I think the confusion between the tort and the coverage law, aside from the small circumstance where the insurer is to look at the complaint and extraneous facts in which you might be aware and determine coverage. After that, I don't think the tort law has anything to do with the coverage law, and I don't think anything we've heard today or anything that Mr. Miller, respectfully, has put forth in his briefs even changes that a little bit. And I think that's exactly what it should be. I think that what happened here is exactly what should be happening. The insured, the named insured Phoenix, we were not, frankly, the general contractor, ICC, was not involved in that work. There was no suggestion that we were involved. As a matter of fact, the facts that they had in their file but did not share with their coverage counsel at the time he issued their initial opinion clearly showed that this was work that was done exclusively by Phoenix. And, yes, we contracted with them for it. And the contracts show you're in charge of all the work. You're in charge of all the safety. In effect, if anything bad happens, it's on you. And I know there are other issues involved, but the way that by practice this gets resolved in Illinois is with these insurance contracts. And I might also point out that there's been a lot of discussion, and even in our brief, of Waukegan Steel and CSR roofing and Syntex homes, which are all cases that arise out of the first district, but at the time we effected the tender in December of 2015, we researched the case. And, frankly, you all were ahead of it. And Pekin v. Hallmark says exactly what, which was issued in 2009, says what Syntex homes says in 2017. So Pekin v. Hallmark recited their brief, and I apologize because we almost buried the lead there, which I typically try to avoid to do when writing a brief, although I thought, frankly, it would be sufficient to catch your attention. I think the second district has been way ahead of us from the beginning. And then talking about Kearney and the other first district noise, I'll say, those decisions have talked about an endorsement such as that is proffered here. It's all very interesting, and it doesn't have anything to do with anything, and it doesn't change the result. Mr. Muir's suggestion is we're trying to convert a vicarious liability endorsement to cover direct negligence fundamentally misperceives the issue and how coverage cases are determined in Illinois. What the insurer is to do is to look at the policy language, which says here, such person is an additional insurer only with respect to your liability, that's if he makes it, only with respect to your liability, which may be imputed to that person or organization directly arising out of your work. I will concede, for purposes of discussion, that that does appear to limit situations to vicarious liability. But vicarious liability was a possibility. It was a potentiality. But you never pled that. You didn't allege that. I'm sorry? Did you allege vicarious liability? I did not. No. No, I did not. We did not, Judge. So is that an issue? If it's an issue, I think it's an issue that's addressed by the plaintiff's complaint and the case law that discusses how the plaintiff's complaint should be interpreted. And the plaintiff's complaint uses over and again by its agents, servants, and employees. So I think it is an issue. And I think it's an issue that UFC was aware of. I know it is. They had the materials in their file. They knew that the people that we had out there, who knows, right? Who knows who would be determined by a jury to be our agents, servants, and employees. What we do know is there was a potentiality when this complaint was filed that they would be deemed our agents. And that's what this is about. All there has to be is potential coverage under the policy for a defense obligation to be owed. And for reasons that still make me scratch my head, they didn't do it. The standard is broad. Yes, to trigger a defense obligation. That's right. And it was triggered here within 12 days of the complaint being filed. And nonetheless, up until today's date, UFC has taken the position that there's no coverage. It's just wrong. It's wrong. I don't know why, and I wish there were a better remedy than exists, but frankly, and Mr. Miller's a friend of mine, I don't know why quite the system tolerates this, but we do. And perhaps that leads us to better decisions. But there's no question to me here, and frankly, I don't think it's a fair question on the case law, that a defense obligation was owed and should have been rightly provided. What about if, in fact, as Mr. Miller's mentioned, it's determined at the end of this that it really was an ode? Then what do we do? That's a great question that we never got to here. And I don't think this court or any appellate court is in the business of deciding issues that are not squarely before it. The reason it went away, by the way, happens to be because the only liability that would have arisen for ICC, derived from the name insured, which was Phoenix. So look at what happened here. Phoenix injures the gentleman, he gets his comp claim, and they come to a mediation and settle with him separately, which the law entitles. It's all good, but that's exactly what you would expect if the only liability on our part was vicarious. So sure, we never got to a jury determination of all of these issues. That happens more often than not, which is why the defense obligation is constructed as it is. Is there any problem with alleging or pleading vicarious liability as well, or is this just a strategic issue? Do you mean for us or third-party complaints? Yes. You know, I don't think that that matters at all, no. I think that the vicarious liability comes up from the – I suppose what you're saying is have we elected our remedies by not including in our third-party complaint the liability? Well, I'm not going to tie you to that. I'm just asking why you couldn't do that. I suppose we could if we thought it were necessary. But in total frankness, Your Honor, I don't think the third-party complaint – it doesn't quite apply here. I don't think the third-party complaint is necessary to trigger coverage. Well, it's not incompatible. It's not incompatible, no. It's not incompatible. No, it isn't. But I think that the core of it is from the complaint itself and perhaps whatever true but unpleaded facts everyone is aware of. And there's no real question here that the UFC was aware of the facts that made this really solely Phoenix's problem in terms of what happened up there. Thank you. Thank you. Once again, may it please the Court and the counsel, I think it is an apt question as to why, if they believed there to be an agency relationship that led to indemnification, then the ICC didn't add an indemnification claim to its third-party complaint and instead elected to stand on fault apportionment and contribution. That's because they know full well in the contract between ICC and Phoenix, it says that the relationship is that of contractor to independent contractor. That's another of the problems with these cases where you presuppose based upon the allegations in the complaint using the boilerplate agents, officers, and employees that that is sufficient without pleading facts of agency to create an agency relationship. Nobody in this case believed that there was an agency relationship between ICC and Phoenix. The complaint alleged that the plaintiff was an employee of Phoenix, correct? The complaint alleged that's correct, and he was. So why wouldn't that tie Phoenix to ICC? That doesn't tie them into any relationship other than as a contractor or subcontractor, independent contractor, the rule of law is and always has been, since Gomeon versus wherever, that a contractor is not liable for the acts and omissions of an independent contractor, and that's why you have these relationships. But the duty to defend standard is that the duty to defend arises whenever the insured is potentially liable. It's much broader than any other coverage. So, I mean, even if they didn't list it and they listed who they listed the parties, isn't that something that could set out a potential liability on behalf of the insured? We do not believe that to be the case unless we are willing to plasticize a potential to the point where anything is a potential or a possibility. Here... Well, I thought the case law, to piggyback on that, was simply that the complaint couldn't foreclose the possibility of indemnification. That is not the standard. There must be a realistic potential or possibility based upon the facts which are alleged and the facts which were alleged here, and I would direct the court to page 26 of our brief, where what we do is schedule a comparison between the allegations that were not sufficient for an agency relationship in the Carney case with those in this case, because Carney clearly says there is a distinction between direct liability, which is not based upon an agency relationship... Again, you're conflating court liability with the duty to defend. out of the allegations of the complaint. If the allegations of the complaint do not create an agency relationship, then there is no basis upon which to hypothesize a duty to defend. Well, how can I... I can't remember now the name of our plaintiff, but there's... Forster, Bob Forster. How can his complaint bind your opponent to, okay, we're only going to cover that, and if something else happens, well, we're shot, but we're only going to follow what they're alleging. Why can't they protect themselves in their pleadings? They can't make Forster do something else. No, they certainly can't make Forster do something else, but at the same time, Forster, if what he wants is to create an agency relationship, because that is what he must allege. And again, I commend the court to the comparison of the allegations that the Carney case found to be insufficient, and again on page 5 of our reply brief, we set forth the allegations, which are allegations of direct negligence, direct liability, not vicarious liability. The only vicarious liability that you can find alleged is the use of the word agent. And as the Supreme Court in Connick v. Suzuki said, that is not sufficient. You've got to have facts to establish agency, and agency presupposes that the principle is fully free from the fault. So we've gone for 40 years evolving towards fault apportionment, and now we're backtracking here, trying to create a vicarious responsibility where none exists. And as we point out, if you're looking at possibilities, and in Pekin v. Wilkerson, the court says we look at the pleadings, including the third-party complaint, if this case were tried based upon those pleadings, there would be no vicarious liability, because there is no place for vicarious liability in those pleadings when you get to the conference on instruction, and when the case goes to the jury. There is no result that could be one of vicarious liability. We simply ask this court to look at the realities and the public policies that underpin the evolution of a fault apportionment. Thank you very much. Thank you. All right, counsel, thank you for your travels, as well as the argument this morning. We will take the matter under advisement, and this court now stands adjourned.